## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

RYAN P. MASSEY,

      Petitioner,

v.                                Case No. 4:19-cv-279-RH-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Ryan P. Massey has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 12). Massey did not reply.[1] The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Massey is not entitled to habeas relief.[2]

---

[1] Massey's reply deadline expired on May 28, 2020. (*See* Doc. 13).

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I. BACKGROUND AND PROCEDURAL HISTORY

In Leon County Circuit Court Case No. 2012-CF-1721, a jury found Massey guilty of Burglary of a Dwelling with Person Battered. (Doc. 12-2, Ex. B, Trial & Sentencing Tr. at 213-14).[3] The trial court adjudicated Massey guilty and sentenced him as a Prison Releasee Reoffender ("PRR") to imprisonment for life. (*Id*. at 218). Massey's qualification as a PRR was based on his commission of the burglary on May 25, 2012, which was within 3 years of his release from prison on November 12, 2011, upon expiration of his sentence for felony battery. (*Id*. at 217-18). The Florida First District Court of Appeal ("First DCA") affirmed the judgment on August 5, 2014, *per curiam* and without written opinion. *Massey v. State*, 146 So. 3d 1176 (Fla. 1st DCA 2014) (Table) (copy at Doc. 12-5, Ex. E).

On August 18, 2015, Massey filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Doc. 12-6, Ex. F at 4-8 (Initial Mot.); *Id*. at 12-28 (Am. Mot.); *Id*. at 29-47 (Second Am. Mot.)).[4] The state circuit court conducted an evidentiary hearing on August 9, 2017, during which Massey was assisted by counsel. (Doc. 12-6, Ex. F at 115-86

---

[3] Citations to page numbers are to the page numbers of the original document.

[4] When a page of an exhibit bears more than one page number, the court cites to the number appearing in the bottom right corner of the page.

(Evidentiary Hr'g Tr.)). At the close of the hearing, the state court denied relief, making oral findings on the record. (*Id*. at 181-85). The court reduced its ruling to a written order filed on August 10, 2017. (*Id*. at 112). The First DCA affirmed *per curiam* and without written opinion. *Massey v. State*, 267 So. 3d 367 (Fla. 1st DCA 2019) (Table) (copy at Doc. 12-9, Ex. I). The mandate issued April 23, 2019. (*Id*.).

Massey filed his federal habeas petition on June 14, 2019. (Doc. 1). The petition raises four claims of ineffective assistance of trial counsel. (*Id*.). The State asserts that Massey's claims fail because two claims are procedurally defaulted and the remaining two are without merit. (Doc. 12).

## II. Relevant Legal Principles

### A.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

---

[5] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

**B.    Federal Law Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and

courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). "Because of this burden, when the evidence is unclear . . ., [courts] presume counsel performed reasonably and exercised reasonable professional judgment." *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008) (citations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A

reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III. DISCUSSION

**Ground One**    **"Petitioner Was Denied His U.S. Constitution Rights To The Sixth And Fourteenth Amendment When His Trial Counsel Failed To Seek A Mental Health Evaluation/Competency Hearing Even After The Petitioner Made Him Aware Of His Mental Illnesses." (Doc. 1 at 6).**

Massey claims that his trial counsel, Charles Collins, was ineffective for failing to request a competency evaluation and hearing after Massey informed Collins, in conversations and through correspondence, that he had a history of mental illness and was "heavily medicated on powerful mind altering prescribed psychotropic medications." (Doc. 1 at 6-8). Massey alleges that he signed a medical release form so that Collins could review his medical records, but Collins never obtained the records. Massey also alleges that he expressed to counsel, on "several occasions," a "lack of understanding and confusion [sic]." (*Id.* at 10). Massey contends that had Collins reviewed his medical records, he would have "believe[d] Petitioner Mr. Massey was heavily medicated and incompetent to proceed to trial and did lack the capacity to understand the nature and object of the proceedings." (*Id.* at 6). Massey asserts that he was prejudiced by Collins's deficiency, because had Collins offered evidence of his mental illness, "the State may have s[ought] different sentencing possibilities" and Petitioner "would not have been proceeded against [while] incompetent." (*Id.* at 11).

Page 10 of 34

The parties agree that Massey exhausted his state remedies by presenting this claim to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 12; Doc. 12 at 14-15). The State asserts that Massey is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. (*Id*. at 15-23).

## A.    The State Court's Decision

Massey presented this claim to the state courts as Ground One of his second amended Rule 3.850 motion. (Doc. 12-6, Ex. F at 33-35). The state circuit court orally rejected the claim at the close of the postconviction evidentiary hearing:

> THE COURT:  All right. I had reviewed this matter previously and I'm aware of competency issues based on my involvement in those other cases that I've had over the years. But the struggle I have here with the claim made by the defendant is in 2011 he was sentenced on a case where he pled. There was no competency issues [sic] in that case. 2012, 2013, comes along, he's participating in the developing arguments with his counsel so that suggests that he's able to participate and assist in his defense.
>
> On top of that, the medical records that you provide demonstrate that he was a strong advocate on his own behalf with respect to this medical treatment. That does not suggest incompetence at all. That suggests that he's in fact aware of his mental condition and able to deal with it.
>
> The fact that someone is on a prescription drug, whether it's psychotropic or not, doesn't mean that they're incompetent to proceed. It wouldn't be an if this, then that sort of scenario where if you're on psychotropic medication you're therefore incompetent to proceed. That's not the standard.

I think Mr. Collins' letter of May 17, 2013 where he says if you think you're suffering from something that would give me a basis for warranting a downward departure, get it to me. I haven't seen anything in the records that were produced today that would suggest that there was anything that would warrant a downward departure. These inmate medical request forms certainly wouldn't be sufficient.

The letters that Mr. Massey wrote show logical reasoning and ability to convey thoughts and things like that which would suggest he's not incompetent to proceed. So on ground one, I think that Mr. Collins was not ineffective for not seeking an evaluation to determine his competency because I think that there wasn't any reason to doubt his competency at that point. He hadn't seen anything that would make him believe that he was incompetent to proceed.

(Doc. 12-6, Ex. F at 181-82). The court reduced its ruling to a written order which

stated, in relevant part:

Prior to the evidentiary hearing, the Court reviewed the pleadings including the State's response. Mr. Massey testified on his own behalf. Because most of Mr. Massey's postconviction claims were based upon the alleged ineffective assistance of counsel, his [former] court appointed attorney, Charles Collins, testified on behalf of the State. The Court then considered the closing arguments of counsel.

The Court having reviewed the defendant's motions, the State's written response thereto, the testimony of the witnesses and the arguments of counsel it is therefore:

ORDERED AND ADJUDGED that the defendant's Amended Motion for Postconviction Relief is DENIED for the reasons stated on the record during the evidentiary hearing.

(*Id*. at 112). The First DCA summarily affirmed without explanation. (Doc. 12-9,

Ex. I).

The First DCA's summary affirmance is an "adjudication on the merits" of Massey's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

## B.   Massey's Claim Does Not Warrant Habeas Relief

The "conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citing *Bishop v. United*

*States*, 350 U.S. 961 (1956)). A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (internal quotation marks omitted) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (quotation marks and alterations omitted).

"[U]nder certain circumstances, trial counsel's failure to apprise the court of a client's changing mental state—thereby depriving the court of critical information regarding its own potential duty to hold a *Pate v. Robinson* hearing—can constitute ineffective assistance." *Johnston v. Singletary*, 162 F.3d 630, 635 (11th Cir. 1998).[6] Florida provides this procedure for raising the issue of a defendant's competency:

> If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of

---

[6] When "the evidence raises a bona fide doubt as to a defendant's competence to stand trial, the judge on his own motion must . . . conduct a [competency hearing]." *Pate*, 383 U.S. at 385 (quotation marks omitted).

the motion, and may order the defendant to be examined by no more
than 3 experts, as needed, prior to the date of the hearing.

Fla. R. Crim. P. 3.210(b).

The Eleventh Circuit has recognized that "defendant's attorney is in the best
position to determine whether the defendant's competency is suspect," which means
that the failure of counsel "to raise the competency issue at trial, while not
dispositive, is evidence that [the defendant's] competency was not really in doubt
and there was no need for a *Pate* hearing." *Watts v. Singletary*, 87 F.3d 1282, 1288
(11th Cir. 1996). Here, Massey argues that several facts should have given Collins
reason to doubt his competency: (1) his history of mental illness, (2) his use of
psychotropic medication, and (3) his expressions to counsel of confusion and lack
of understanding of the proceedings against him.

In reviewing the state court's decision, this court defers to the state court's
factual findings, because they are amply supported by the record and because
Massey has not rebutted them with clear and convincing evidence to the contrary.
*See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011)
("AEDPA affords a presumption of correctness to a factual determination made by
a state court; the habeas petitioner has the burden of overcoming the presumption of
correctness by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)). This
deference extends to the state court's credibility determinations. Eleventh Circuit

Page 15 of 34

precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Based on the state court's findings of fact, fairminded jurists can concur in the state court's conclusion that Collins's failure to request a competency evaluation and hearing was not objectively unreasonable. Collins testified at the evidentiary hearing that he had several conversations with Massey in person, and that he read Massey's correspondence. (Doc. 12-6, Ex. F at 150-58 (Collins's Test.)). Nothing in Collins's interactions with Massey raised concern about Massey's competence or his ability to assist in his defense either pretrial or at trial. (*Id*.). Collins knew that Massey had mental health issues for which he was taking medication, but neither the mental illness nor the mediation interfered with Massey's ability to assist Collins or to understand the criminal proceedings against him. (*Id*. at 157).

The records introduced at the postconviction evidentiary hearing support Collins's testimony—and the state court's finding—that Massey's mental health issues were controlled with psychotropic medication. (Doc. 12-6, Ex. F at 84-109).

Page 16 of 34

Those records also indicate that Massey had a rational understanding of his mental health issues and medication history, and that he was an effective advocate for himself. (*Id*.). Massey's correspondence to Collins demonstrates that he had a rational understanding of the proceedings against him. (*Id*. at 66-83).

Fairminded jurists also can concur in the state court's conclusion that Massey failed to prove that there was a reasonable probability he would have been deemed incompetent to stand trial had counsel moved for a competency evaluation. As the state court noted, mental illness and treatment with psychotropic medication, alone, does not establish a reasonable probability that Massey would have been deemed incompetent. *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992) ("Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial.").

The state court's rejection of Massey's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Massey is not entitled to habeas relief on Ground One.

**Ground Two**      **"Petitioner Was Denied His U.S. Constitution Rights To the Sixth And Fourteenth Amendment To Competent Counsel (During The Plea Barg[ain]ing Process) When Trial Counsel Misadvised Petitioner As To The Imminent Sentence He Would Receive Upon Conviction, Causing Hm To Reject A Favorable Plea." (Doc. 1 at 14).**

Massey claims that Collins provided ineffective assistance during plea negotiations. In support, Massey alleges that at a pretrial conference on September 4, 2013, the State made a plea offer for 25 years of imprisonment followed by 5 years on probation. (Doc. 1 at 14-15). Massey states that he rejected the offer based on Collins's misadvice that "there would be better sentencing possibilities" if Massey went to trial because (1) the 25-year sentence was, in effect, a life sentence; (2) the fact that the prosecutor made a plea offer meant that she would not pursue a PRR sentence; (3) if Massey went to trial, his sentence "would ultimately be up to the judge" and (4) under Florida's sentencing guidelines, Massey "only scored out to 46.725 months in state prison." (*Id*. at 14-15). Massey claims that Collins never told him he faced a mandatory sentence of life imprisonment as a PRR if convicted.

In an allegation seemingly inconsistent with his assertion that he "rejected" the plea offer based on Collins's misadvice, (*id*. at 14), Massey also asserts that he communicated to Collins his acceptance of the offer during jury selection on September 9, 2013, but Collins advised him that it was "no longer available." (*Id*. at

15). Massey contends that Collins's failure to inform him "that there was a time limit on the plea" is "equivalent to failing to convey the offer." (*Id*.).

The State asserts that Massey's claim is procedurally defaulted. (Doc. 12 at 24-26). The State explains that although Massey presented the state courts with his allegations that he rejected the plea offer based on counsel's misadvice about sentencing (the "sentencing-consequences claim"), he did not claim, as he now does, that he would have accepted the State's offer had Collins informed him there was a time limit on it (the "time-limit claim"). The State contends that because Massey did not present both aspects of his ineffective assistance claim to the state courts, the entire claim is procedurally defaulted. (*Id*.).

### A.    Federal Habeas Exhaustion Principles

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)

("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). A claim that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40.

Specifically with regard to claims of ineffective assistance of counsel, the Eleventh Circuit recently explained:

> The exhaustion requirement applies "not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Id*. at 1344. With respect to ineffective assistance of counsel claims, the "particular factual instances of ineffective assistance of counsel" must first be presented to the state courts. *Id*. In other words, "the habeas petitioner must assert [the] theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice." *Id*.

*Greenwood v. Sec'y, Dep't of Corr.*, 794 F. App'x 831, 833–34 (11th Cir. 2019) (quoting *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343 (11th Cir. 2004)).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Page 20 of 34

## B.    Massey Exhausted His Sentencing-Consequences Claim, but Procedurally Defaulted his Time-Limit Claim

Massey's state postconviction motion raised a single challenge to Collins's representation during plea negotiations. Massey claimed that Collins failed to tell him that he would be subject to a mandatory term of imprisonment for life if he was convicted at trial, and that Collins affirmatively misadvised him of the sentencing consequences of going to trial. (Doc. 12-6, Ex. F at 35-39 (Second Am. Mot.); *Id.* at 115-86 (Evidentiary Hr'g Tr.); Doc. 12-7, Ex. G (Postconviction Appellate Br.)). Massey did not claim that Collins failed to inform him of an expiration date on the plea offer and that such failure prevented him from timely accepting the offer.

Massey's time-limit claim, therefore, is procedurally defaulted. *See Kelley*, 377 F.3d at 1348 (holding that federal claim was unexhausted because it presented a different factual instance of ineffective assistance than claim presented in state court); *see also, e.g., Wardell v. Sec'y, Fla. Dep't of Corr.*, 692 F. App'x 578, 580-81 (11th Cir. 2017) (same; distinguishing federal habeas claim—that counsel was ineffective during plea negotiations for failing to advise petitioner that he would be subject to 25-year mandatory minimum if he rejected the plea offer—from state postconviction claim that counsel was ineffective during plea negotiations for failing to inform petitioner that he would serve only 85% of the sentence if he accepted the plea offer); *Greenwood*, 794 F. App'x at 834-35 (same; distinguishing federal

habeas claim—that counsel was ineffective for losing advantageous plea deal and failing to prepare for trial due to ignorance of plea deal's revocation—from state postconviction claim that counsel was ineffective for failing to investigate by deposing state witnesses, interviewing potential defense witnesses, and considering possible DNA or fingerprint evidence).

Massey makes none of the requisite showings to excuse his procedural default. This court's review, therefore, is confined to Massey's sentencing-consequences claim.

### C.    Section 2254 Review of Massey's Sentencing-Consequences Claim

####    1.    *The State Court's Decision*

Massey presented his sentencing-consequences claim to the state courts as Ground Two of his second amended Rule 3.850 motion. (Doc. 12-6, Ex. F at 35-39). The state circuit court rejected the claim at the close of the postconviction evidentiary hearing:

> With respect to the impact of PRR and the potential for an alleged sentence, I think that it was explained to him that the PRR would result in a life sentence. Now, I don't think Mr. Massey necessarily agreed with that analysis. It sounds like Mr. Garcia [Massey's prior trial counsel] told him that and Mr. Collins told him that. I think Mr. Massey was operating under his belief that his argument was strong. And it was presented, actually, by Mr. Collins [at sentencing] and it did not prevail.

Now, if there was an error in the sentencing that was a matter that could have been raised on appeal. I don't know if it was appealed or not. I assume it was but was it per curium?

MS. THOMAS [Massey's Postconviction Counsel]:  I believe it was, Judge.

THE COURT:  Was it per curium [sic] affirmed?

MS. THOMAS:  Yes.

THE COURT:   Okay. So the appellate issue on whether the sentence was legal or not was presented to that court and that court decided it was legal. I think that was explained to him. And the fact that the PRR notice had been filed would have put him on notice that there was a potential for a life sentence so I'm denying on that ground. I don't think there was deficient behavior by Mr. Collins in any event.

(Doc. 12-6, Ex. F at 182-83). This reasoning was incorporated into the circuit court's written order denying postconviction relief. (*Id*. at 112). The First DCA summarily affirmed without explanation. (Doc. 12-9, Ex. I).

The First DCA's summary affirmance is an "adjudication on the merits" of Massey's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Massey's claim for the same reasons as the lower court. 138 S. Ct. at 1192.

## 2.     *Massey's Claim Does Not Warrant Habeas Relief*

The state court's rejection of Massey's claim was based on the factual finding that at the time Massey rejected the State's 25-year plea offer, he had been notified

through multiple sources that he was subject to a mandatory sentence of life imprisonment under Florida's PRR statute if he was convicted at trial.[7] This court defers to the state court's factual determination because it is amply supported by the record and because Massey has not rebutted that finding with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e); *Consalvo*, 664 F.3d at 845.

Collins's testimony at the postconviction evidentiary hearing, which the state court implicitly credited, confirmed that Collins informed Massey he would be subject to a mandatory PRR sentence of life imprisonment, but Massey disbelieved counsel:

> Q [Massey's Postconviction Counsel]:  Do you recall at any point Mr. Massey understood if he went to trial and was convicted, Judge Fulford had no discretion and that he would get life in prison?

> A [Mr. Collins]:  I remember there being a lot of confusion on his behalf with that. Him thinking that he did not qualify for PRR and me explaining to him that everything that I knew at that point in time indicated that the judge would have no discretion if he was found guilty, that he would have to be sentenced to life. And I remember telling him that but him still, for whatever reason, believing that it didn't apply to him.
> . . . .

> All I can tell you is he was informed, of my knowledge, of the applicable law at the time was that it was my understanding the judge would have no discretion and he'd get life. But he still believed that he

---

[7] The multiple sources were (1) the State's PRR notice, (2) Massey's prior trial counsel Garcia and (3) Collins.

wouldn't. So I informed him of what I believed the law was and he told me what he thought the law was. That's kind of where that was.

(Doc. 12-6, Ex. F at 161-62).

The sentencing transcript corroborates Collins's testimony that he informed Massey of the mandatory PRR sentence, but Massey did not believe he qualified for application of the PRR statute based on his personal interpretation of caselaw. After the verdict was read and the court proceeded to sentencing, Collins informed the court:

> MR. COLLINS:    Judge, based on what the jury has come back with, I don't believe there's any discretion in the sentencing. I believe it's a mandatory life sentence. But my client has provided me with case law that he wants me to submit to the Court in which it's his position that this is not a qualifying offense for PRR.
>
> THE COURT:    All right. I'll be happy to review it. Do you have a copy for the State as well?
>
> MR. COLLINS:    They were familiar with it and also provided me with case law from the First DCA which is contrary to what he provided me with.
>
> THE COURT:    Thank you.

(Doc. 12-2, Ex. B, Trial & Sentencing Tr. at 216).

Based on the state court's finding, a fairminded jurist can concur in the state court's conclusion that counsel was not ineffective during plea negotiations. Massey is not entitled to federal habeas relief on Ground Two.

Page 25 of 34

**Ground Three**     **"Petitioner Was Denied His U.S. Constitution Rights To The Sixth And Fourteenth Amendment When His Trial Counsel Failed To Seek Viable Insanity Defense." (Doc. 1 at 17).**

Massey claims that Collins was ineffective for failing to present an insanity defense. (Doc. 1 at 17-19). The State asserts a procedural default defense based on Massey's abandonment of this claim in his postconviction appeal. (Doc. 12 at 27-32).

### A.     Federal Habeas Exhaustion Principles

As outlined above, federal habeas exhaustion principles require a state prisoner to fairly present his federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille*, 489 U.S. at 351; *O'Sullivan*, 526 U.S. at 845.

In Florida, when a defendant receives an evidentiary hearing on his Rule 3.850 postconviction motion, he is required to file an appellate brief. *See* Fla. R. App. P. 9.141(b)(3). Failure to address an issue in the initial brief constitutes waiver or abandonment of that issue, and renders it procedurally defaulted on federal habeas review. *Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that federal habeas petitioner, who received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his ineffective assistance claim when he failed to argue it in his initial brief on appeal from the denial order).

### B.    Massey's Claim is Procedurally Defaulted

Massey presented this claim to the state courts as Ground Three of his second amended Rule 3.850 motion. (Doc. 12-6, Ex. F at 39-43). The state circuit court denied relief on the merits after an evidentiary hearing. (*Id*. at 183-84). Massey appealed, but his counseled appellate brief did not raise this issue. (Doc. 12-7, Ex. G). Instead, Massey sought appellate review of only Grounds One, Two and Four of his Rule 3.850 motion. (*Id*.). Massey's abandonment of this claim in his postconviction appeal renders the claim procedurally defaulted on federal habeas review. *Atwater*, 451 F.3d at 810; *see also Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998) (holding that petitioner's abandonment of his claim in his postconviction appeal rendered the claim procedurally barred for federal habeas purposes); *Rightmire v. Fla., Sec'y Dep't of Corr.*, No. 17-10947-D, 2017 WL 3923327, at *1 (11th Cir. May 15, 2017) (unpublished opinion) (holding that six of petitioner's federal habeas claims were procedurally defaulted because he failed to raise them in his brief on appeal from the denial of postconviction relief after an evidentiary hearing).

Massey makes none of the requisite showings to excuse his procedural default. Massey's procedural default bars federal habeas review of Ground Three.

**Ground Four**       **"Petitioner Was Denied His U.S. Constitution Rights To The Sixth And Fourteenth Amendment When Counsel Failed To Request A Jury Instruction Regarding The Petitioner's Use Of Psychotropic Medication." (Doc. 1 at 23).**

Massey's final claim asserts that Collins was ineffective for failing to request an instruction, pursuant to Florida Rule of Criminal Procedure 3.215(c)(2), that Massey's presence during trial was aided by the use of psychotropic medication. (Doc. 1 at 23-25).

Florida Rule of Criminal Procedure 3.215(c)(2) provides:

**(c) Psychotropic Medication**. A defendant who, *because of psychotropic medication, is able to understand the proceedings* and to assist in the defense shall not automatically be deemed incompetent to proceed simply because *the defendant's satisfactory mental condition is dependent on such medication*, nor shall the defendant be prohibited from proceeding solely because the defendant is being administered medication under medical supervision for a mental or emotional condition.

. . . .

(2) If the defendant proceeds to trial with the aid of medication for a mental or emotional condition, on the motion of defense counsel, the jury shall, at the beginning of the trial and in the charge to the jury, be given explanatory instructions regarding such medication.

(Emphasis added).

Florida Standard Jury Instructions 2.1(d) and 3.6(c) provide that defense counsel may request the following explanatory instruction, as both a preliminary

instruction and a final instruction, if the defendant proceeds to trial with the aid of psychotropic medication:

> (Defendant) currently is being administered psychotropic medication under medical supervision for a mental or emotional condition. Psychotropic medication is any drug or compound affecting the mind or behavior, intellectual functions, perception, moods, or emotion and includes anti-psychotic, anti-depressant, anti-manic, and anti-anxiety drugs. You shall not allow the defendant's present condition in court or any apparent side effect from the medication that you may observe in court to affect your deliberations.

Fla. Standard Jury Instructions in Criminal Cases, 2.1(d), 3.6(c) Psychotropic Medication.

The parties agree that Massey exhausted his state remedies by presenting this claim to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 22, 26; Doc. 12 at 33). The State asserts that Massey is not entitled to relief because he fails to satisfy § 2254(d)'s demanding standard. (*Id*. at 33-34).

## A.     The State Court's Decision

Massey presented this claim to the state courts as Ground Four of his second amended Rule 3.850 motion. (Doc. 12-6, Ex. F at 43-45). The state circuit rejected the claim at the close of the postconviction evidentiary hearing:

> Regarding the failure to give a psychotropic medication instruction, I think the important point is raised by the State with regard to that Zommer case. I think it has to be a matter where the psychotropic medication is what is making this person competent to proceed to trial. And under those circumstances the instruction would be appropriate.

> I don't think it's appropriate to just give a psychotropic medication instruction without a reason. And the lack of evidence entered regarding the use of psychotropic medication would have been another hurdle and I think that Ms. Thomas [Postconviction Counsel] presented that argument as well, or at least acknowledged that argument as well.

(Doc. 12-6, Ex. F at 184-85) (referencing *Zommer v. State*, 160 So. 3d 368 (Fla. 2015)). The circuit court incorporated this reasoning into its written order denying postconviction relief. (*Id*. at 112). The First DCA summarily affirmed without explanation. (Doc. 12-9, Ex. I).

The First DCA's summary affirmance is an "adjudication on the merits" of Massey's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Massey's claim for the same reasons as the lower court. 138 S. Ct. at 1192.

## B.    Massey's Claim Does Not Warrant Habeas Relief

The state court determined, as a matter of state law, that the instruction on psychotropic medication was required only when the defendant's ability to proceed to trial was dependent on the use of psychotropic medication. *See Zommer*, 160 So. 3d at 379 (citing *Alston v. State*, 723 So. 2d 148, 158 (Fla. 1998)). This court must defer to the state court's determination of that state-law issue. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle

that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

The state court also determined, reasonably, that Massey failed to produce evidence at the postconviction evidentiary hearing establishing that his ability to proceed to trial was dependent on the use of psychotropic medication. Although Massey described the medications he was taking at the time of trial, he offered no expert testimony that the medications were necessary for him to remain competent during trial. (Doc. 12-6, Ex. F at 115-86 (Evidentiary Hr'g Tr.)).

Based on the evidence before the state court, a fairminded jurist can agree with the state court's conclusion that Massey failed to carry his burden to show that he was entitled to the jury instruction on psychotropic medication, that Collins's failure to request the instruction was objectively unreasonable, and that there was a reasonable probability the result of his trial would have been different had Collins requested the instruction. *See Burt*, 571 U.S. at 22-23 (emphasizing that "the burden to 'show that counsel's performance was deficient' rests squarely on the defendant" (quoting *Strickland*, 466 U.S. at 687)); *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

The state court's rejection of Massey's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Massey is not entitled to habeas relief on Ground Four.

## IV.    CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S.

at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Ryan P. Massey*, Leon County Circuit Court Case No. 2012-CF-1721, be **DENIED**.

Page 33 of 34

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Pensacola, Florida, this <u>28th</u> day of May, 2021.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**